USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/22/2023_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: LUCILLE S. WILLARD,

                  Debtor.

LUCILLE S. WILLARD,

                  Appellant.

   -against-

KRISTA PREUSS,

                  Appellee.

No. 21 Civ. 10220 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Appellant-Debtor Lucille S. Willard ("Willard") commenced this appeal against Appellee-Trustee Krista Preuss ("the Trustee"), seeking reversal of a Bankruptcy Court order dated October 20, 2021 ("Distribution Order," Trustee's Appendix at 199-200, ECF No. 7). The Distribution Order (1) directed Willard to turn over the net proceeds of a real property sale to the Trustee, and (2) denied Willard's request to pay the attorneys' fees directly from the said proceeds. (ECF No. 1.)

    For the following reasons, the Distribution Order is VACATED as to both issues.

## BACKGROUND

    This case arose from a post-petition, pre-confirmation Section 363 sale of an investment real property during Willard's Chapter 13 case. The two issues presently on appeal are, simply put: first, who gets to keep the money from the sale; and second, whether Willard's attorneys can get paid with the money from the sale. The following undisputed facts are drawn from the record.

    On February 12, 2020, Willard commenced a voluntary Chapter 13 petition. At the time of the petition, Willard owned a non-residence real property located at 38 Samsonville Road,

1

Kerhonkson, New York 12446 ("the Property")[1], which was used as a boxing camp. (Trustee Appendix at 189, ECF No. 7.) Willard indicated in her proposed Chapter 13 plan ("Proposed Plan" or "the Plan")—which was filed on February 12, 2020, and never amended to date—that she "has been actively attempting to sell [the Property]" and that "[u]pon sale of the property, all secured creditors of same will be paid in full at the time of the closing. A motion approving such a sale will be filed at the appropriate time." (Willard Mem. at 9, ECF No. 6.)

Willard's Proposed Plan further provided for a monthly payment to the Trustees of $100 per month for the first three months, then $645 for fifty-seven months, for a total of $37,065 over a 60-month period. At the time of filing, Willard had a monthly income slightly exceeding $100. Willard's submitted budget indicated that the $645 monthly payment would become possible when Willard opened a Bed and Breakfast in her home in June 2020, four months after the February 2020 Chapter 13 filing date.

On July 12, 2021, with the Proposed Plan remaining unconfirmed, Willard moved to sell the Property ("Sale Motion") pursuant to Section 363 of the Bankruptcy Code ("Section 363 sale"). Willard's motion requested that all closing costs, plus Willard's counsel's professional fees, be paid directly from the sale proceeds at closing, with the balance disbursed to Willard, to which the Trustee objected.

On August 10, 2021, the Bankruptcy Court conducted a hearing on Willard's Sale Motion, during which the Trustee argued that the proceeds should go to the Trustee and that the attorneys' fees should be paid through the Plan. (Trustee Appendix at 178, ECF No. 7.) The Bankruptcy Court ruled at the August 10, 2021 hearing that (1) all the professional fees associated with the sale of the Property shall be paid through the sale; and (2) all other fees shall go through the Plan.

---

[1] Willard provides that the Property is an "investment real property." (Willard Mem. at 8, ECF No. 6.)

2

(Trustee Appendix at 179, ECF No. 7.) The Bankruptcy Court further directed the parties to brief the issue regarding the sale proceeds (*id.*), which the parties filed on August 19, 2021. The sale of the Property subsequently resulted in net proceeds totaling $354,333.77 ("Sale Proceeds").

On September 3, 2021, Willard's counsel filed a fee application seeking $10,800 for services billed between June 28, 2021 and September 3, 2021. The Trustee, averring that such fees were only indirectly related to the sale of the Property, argued in opposition that these fees should be disbursed by the Trustee in accordance with the Bankruptcy Court's ruling during the August 10, 2021 hearing.

On September 28, 2021, the Bankruptcy Court held another hearing on the issue of the Sale Proceeds. During the hearing, the Bankruptcy Court clarified that "Debtor's Counsel [cannot be] . . . paid out of the sale."[2] The Bankruptcy Court further held that "[t]he proceeds should be turned over to the Trustee in a pre-confirmation." (Trustee Appendix at 187, ECF No. 7.) When the Trustee stated that Willard's Chapter 13 case[3] would "have trouble being feasible in any regard, even with the proceeds" (*id*. at 196), the Bankruptcy Court agreed, stating: "Exactly, exactly . . . that was exactly why the proceeds must be turned over to the Trustee." (*Id*.)

On October 20, 2021, the Bankruptcy Court entered the Distribution Order (1) directing the Sale Proceeds to be turned over to the Trustee in the amount of $354,333.77; and (2) denying Willard's counsel's request to be paid from the proceeds from the Section 363 sale under Section 506(c). (*Id*. at 200.) The Distribution Order became the subject of the instant appeal.

---

[2] The Bankruptcy Court made this ruling while expressly noting that the special counsel (appointed for the sale of the Property) and the realtor can both be paid through the proceeds. (Trustee Appendix at 186-193, ECF No. 7.)
[3] As of December 30, 2021, the secured claims filed in Willard's Chapter 13 case totaled $560,117.82. The allowed general unsecured claims totaled $17,150.67.

**LEGAL STANDARD**

District courts have appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts under 28 U.S.C. § 158(a)(1). A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). "Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006). "A bankruptcy court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Soundview Elite Ltd.*, 646 Fed. App'x 1 (2d Cir. 2016). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Margulies v. Hough* (*In re Margulies*), 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

**DISCUSSION**

**I. Sale Proceeds**

On appeal, Willard argues that the Bankruptcy Court cannot compel a Chapter 13 debtor to turn over the proceeds from the sale of a pre-petition property. The gist of Willard's argument is as follows: In a Chapter 13 petition, the only thing that the Bankruptcy Court is authorized to compel a debtor to turn over is the debtor's post-petition disposable income; the instant net Sale Proceeds are converted pre-petition assets and not disposable income; therefore, the Bankruptcy Court has no authority to take the $354,333.77 from the debtor and deposit it with the Trustee.

The Trustee concedes that the Sale Proceeds are not "disposable income" within the meaning of Section 1325(b)(4). (Trustee Mem. at 11, ECF No. 9.) However, the Trustee avers that the Bankruptcy Court's ruling was within its discretion pursuant to Section 105[4].

---

[4] Section 105(a) of the Bankruptcy Code, titled "Power of court," prescribes that:

Without express guidance from the Bankruptcy Code on this issue, Willard points to the following language by the Supreme Court in *Hamilton v. Lanning*:

> Chapter 13 of the Bankruptcy Code provides bankruptcy protection to "individual[s] with regular income" whose debts fall within statutory limits. 11 U.S.C. §§ 101(30), 109(e). Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors, see §§ 704(a)(1), 726, Chapter 13 debtors *are permitted to keep their property*, but they must agree to a court-approved plan under which they pay creditors out of their future income.

560 U.S. 505, 508 (2010) (emphasis added). The question for this Court, then, is whether the permission Chapter 13 debtors have to "keep their property" deprives the Bankruptcy Court of the authority to compel the sale proceeds of a pre-petition asset to be turned over to the Chapter 13 Trustee. *Id*. at 508.

The Court concludes that the answer is in the affirmative. As previously held by the Bankruptcy Appellate Panel of the Ninth Circuit in *In re Burgie*, the "deal" with Chapter 13 is that "[i]n exchange for keeping all of [the prepetition property], the debtor must commit all post-petition disposable income to the payment of creditors under a chapter 13 plan for a period of three to five years. If the debtor makes all of the payments required under the plan, all of the debtor's dischargeable debts are discharged, and the debtor keeps all of the prepetition assets." 239 B.R. 406, 410 (B.A.P. 9th Cir. 1999).

In opposition, the Trustee argues that *Burgie* is distinguishable, because it involved a confirmed plan, whereas the sale in the instant case was pre-confirmation, and the plan could not be confirmed without the Sale Proceeds. This line of reasoning was shared by the Bankruptcy

---

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105 (West).

Court, which concurred with the Trustee that the Sale Proceeds "must be turned over" to render Willard's Proposed Plan feasible. (Trustee Appendix at 196, ECF No. 7.) The Trustee's argument is misplaced, and the Bankruptcy Court erred.

"An examination of the basic structure of chapter 13 makes it clear that the debtors cannot be compelled to" turn over their pre-petition property, whether post-confirmation, as in *Burgie,* or pre-confirmation, as here. 239 B.R. at 410. Chapter 13, designed by Congress as a voluntary, non-liquidating alternative to Chapter 7, affords debtors the permission to keep their property. *See also Hamilton* at 508. Compelling a debtor to submit a pre-petition asset to the Trustee, and thereby exposing such pre-petition asset to the creditors, runs counter to the congressional design evidenced by Chapter 13's language and structure. It may well be true that without the Sale Proceeds, the Plan is not feasible, in which case Willard's Plan will be denied confirmation. Yet, as Willard points out, Section 1325 does not enable the Bankruptcy Court to require a debtor to turn over any property other than the disposable income to make a plan feasible. Neither do any other sections of the Bankruptcy Code confer such authority.

This Court does not set aside the Bankruptcy Court's findings of fact unless such findings are clearly erroneous. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103. Here, the Bankruptcy Court, while reading into the record the *Burgie* Court's holding (Appendix at 190-191, ECF No. 7), reached a finding in direct contravention of its own conclusion of law. As such, clear error exists as to the Bankruptcy Court's finding that the Sale Proceeds must be turned over to the Trustee.

Accordingly, this Court vacates the Bankruptcy Court's Distribution Order to the extent that Willard is entitled to keep the Sale Proceeds.

**II. Debtor Attorneys' Fees**

The next question on appeal is whether Willard's counsel may get paid directly from the Sale Proceeds. The Court will leave this question for the Bankruptcy Court's consideration on remand, as the Court is of the view that the Bankruptcy Court erroneously, or at least improperly, applied Section 506(c) in its denial of Willard's request during the September 28, 2021 hearing.

A district court reviews a bankruptcy court's conclusions of law *de novo*. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103. Here, this Court is puzzled by the Bankruptcy Court's unexplained denial of Willard's counsel's request "to be paid from the [Section 363 Sale Proceeds] under 11 U.S.C. § 506(c)." (Distribution Order, Trustee Appendix at 200, ECF No. 7.)

Bankruptcy Code Section 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all *ad valorem* property taxes with respect to the property.

11 U.S.C. § 506(c). However, as Willard's counsel insisted during the September 28, 2021 hearing, her fee motion was specifically made under Sections 363(b) and 105, not Section 506(c). In addition, despite a close review of the bankruptcy record, this Court is unable to locate any explainable bases upon which the Bankruptcy Court decided to invoke Section 506(c).[5] Neither

---

[5] It is possible that the Bankruptcy Court may have conflated two different cases, as suggested by the following excerpt from the September 28, 2021 transcript:
> MS. MALIN:  -- engender anger, but the motion under this with regard to fee – payments of fees, do – our firm was under 363(b), Judge, not 506(c); **that was the last case**.
>    In 363(b) and 506(c) provide two exceptions where counsel may be paid, including debtor's counsel – the Southern District is pretty clear on 363(b) – that if debtor's counsel – if there's an asset that sold, and there's sufficient funds in that pre-petition asset to pay counsel, debtor's counsel, through the proceeds as well as special counsel, and all other professionals – none should be treated differently – that the debtor may choose in good faith and good judgment to pay those fees directly to any professional involved in the case.
>    So this is not under 506(c); it's under 363(b). And as I cited case law in the district, as well as I believe the Second Circuit, that said that's certainly up – that's judgment's debtor's – or excuse me, the debtor's call.
> THE COURT:  Mr. Frost?
> MR FROST:  Yes. If I can be heard on that point, Judge?

had the Trustee argued—either during the September 28, 2021 hearing or in its opposition on appeal—that Section 506(c) was the applicable standard.  If the Bankruptcy Court indeed had applied Section 506(c) after due consideration during the September 28, 2021 hearing, this Court is of the view that the Bankruptcy Court shall clarify its reasoning in support of such determination.

Accordingly, this Court vacates the Bankruptcy Court's Distribution Order to the extent that the Order improperly denied Willard's fee request under Section 506(c) of the Bankruptcy Code without explanation.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Distribution Order is VACATED as to both issues on appeal. This matter is REMANDED to the Bankruptcy Court for further consideration, clarification, or proceedings consistent with this Opinion and Order.

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 22, 2023
White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

---

> THE COURT:   Certainly.
> MR FROST:   Two – two comments; and we've – we've had this – these issues come before the Court before as well. The model plan indicates that any additional fees shall be paid through the plan and as administrative claim. Additionally, Judge, Counsel's 2016(b) statement, Document 10, specifically indicates that any additional fees incurred regarding the above items will be paid, will be paid, by an additional retainer through the Chapter 13 plan as an administrative claim.
> THE COURT:   Very good.
> MR. FROST:   So –
> MS. MALIN:   If I may direct your attention, Judge, to the cites that are (inaudible) in the (inaudible) –
> THE COURT:   **Ms. Malin, I am overruling your request to have the fees paid outside the plan**. And I am –
> MS. MALIN:   Okay.
> THE COURT:   Very good.
> MS. MALIN:   Fair enough, Judge.
> THE COURT:   Thank you.

(September 28, 2021 Hearing Transcript, Trustee Appendix at 193-195, ECF No. 7.)